## FOGLEMAN v. INTERURBAN TRANSP. CO.*

### No. 1862.

Court of Appeal of Louisiana. First Circuit. June 30, 1938.

Hawthorn, Stafford & Pitts, of Alexandria, for appellant.

Julius T. Long, of Shreveport, for appellee.

LE BLANC, Judge.

This is a suit brought by the plaintiff to recover from the defendant damages for per-

*Rehearing denied July 27, 1938.

sonal injuries sustained by her and resulting physical impairment and disability, arising out of an automobile accident which occurred on the highway which connects the two cities of Alexandria and Lake Charles, at a point approximately seven miles south of the town of Oakdale, on the afternoon of May 29, 1937. Her demand is for the total sum of $30,575, in which is included $575 for expenses alleged to have been incurred for physicians, nurses and hospital services for her care and treatment.

Plaintiff alleges in her petition that on the afternoon mentioned, she was riding as a guest of one George Ipes in his Plymouth coupe automobile which was being driven at the moment by Miss Edith Durbin, a young lady about twenty-one years of age. Mr. Ipes was also an occupant of the car at the time. She alleges that they were traveling in a careful manner, in a northerly direction on the highway, and at the point already indicated, a large motor passenger bus belonging to the defendant, Interurban Transportation Company, also going in the same direction, and traveling at an excessive rate of speed said to be sixty miles per hour, attempted to pass them and in doing so struck the left front side of their car, forcing it to leave the paved slab of the highway, and despite every effort of the driver to control it, ran off the highway entirely, turning over several times and causing the many injuries she complains of.

She charges the driver of the bus with negligence in attempting to pass the coupe while driving at such a high rate of speed without giving sufficient warning of its approach so as to permit the driver of her car to pull over far enough to her right of the road, and without taking proper precautions to safely pass by them and doing nothing to avoid the accident when he had ample time to do so.

The defendant for answer admits that the plaintiff was injured while riding as a passenger in the Plymouth coupe in the accident referred to but it denies that the accident was in any manner caused through the negligence of the driver of the bus and avers specifically that it was caused solely by the negligent operation of the automobile in which plaintiff was riding. It sets out in detail the manner in which it contends the accident occurred alleging that the bus was traveling at about 45 miles an hour and that as it approached the Plymouth coupe, the driver blew his horn to indicate his intention to pass as the coupe was going at a lesser

rate of speed than was the bus. It is averred further that the driver of the coupe, by her actions gave every indication to the driver of the bus that his signal had been heard and that he would be allowed to pass in the usual manner, and that as he proceeded to pass ahead and had in fact almost completely passed it, the driver of the coupe who had pulled over too far to her right, cut back to her left in order to get back on the concrete portion of the highway and as she did so came too far across and scraped against the side of the bus; the driver then lost control of her car with the result that it again left the highway, overturning several times into the ditch along the right of way. Defendant of course denies any liability whatsoever and prays for a dismissal of the plaintiff's suit.

Upon trial of the case on the pleadings as thus presented, there was judgment in the lower court in favor of the plaintiff in the sum of $4,700, and the defendant has appealed. Plaintiff has answered the appeal asking for an increase in the amount of the award to the sum of $6,800.

As will be readily seen from the issues presented, purely questions of fact are involved in the case. The respective contentions of the two sides are so divergent and conflicting that it becomes necessary to discuss the testimony of the witnesses somewhat in detail.

The car in which plaintiff was riding, as already indicated, was being driven by Miss Edith Durbin who naturally occupied the seat on the side of the steering wheel, that is to the left. The plaintiff occupied the right hand side of the seat and Mr. Ipes sat between them. All three of them of course testified as witnesses to the actual occurrence and in addition, plaintiff produced another witness, a man by the name of Homer Perkins who states that he was following the two vehicles in a truck at a distance between 125 and 150 yards and that he saw the accident. On behalf of the defendant, five witnesses testified concerning the actual occurrence. These included J. A. McKenzie, the driver of the bus, and the following who were passengers aboard: Mrs. James Mimms, Mrs. Cecilia Dufour, Mrs. Rosa Lee Reiszner and Mr. Frank Casteix.

The plaintiff testified that Miss Durbin was driving the car carefully along the highway at about 30 or 35 miles per hour, occupying the right hand side as she went along. She says that she happened to turn her head and observed the bus approaching, and remarked to Miss Durbin as she did so: "There is the bus." Upon being interrogated with respect to the actual point of impact on the car she was in, she stated in a general way that it was on the left side, but on cross examination, in response to the same question, she insists that she did not remember anything but that the bus hit the car and it turned over. From some of her answers the impression might be obtained that the bus ran into the rear of the car. Really and truly, it can not be said that the testimony of the plaintiff is of much assistance to the court in determining the actual manner in which the accident which caused her injuries, did occur.

Miss Durbin, the driver of the car, states that she was driving slowly on her right hand side of the highway, that she did not hear any horn or other warning of the approach of the bus and that the first intimation she had of its presence came from the remark made to her by the plaintiff. She states that she remained on her side of the highway, making no effort to stop her car or to reduce the rate of its speed. The gist of her testimony with regard to the actual impact is that the front side of the bus struck the rear end and side of her car and that she does not remember anything further because she was "knocked out" as the two vehicles came together. Like that of the plaintiff, the testimony of Miss Durbin fails to bear out the theory they advance that the accident happened by the bus cutting in too soon in front of the car in order to regain its lane of travel on the right hand side of the highway.

Mr. Ipes, the third occupant of the coupe, testified that just before the accident happened they were engaged in conversation and that he did not hear the blowing of any horn by the bus driver or any other signal, if any was given. His first information regarding the presence of the bus also came from the remark addressed to them by the plaintiff. On hearing that remark he says he looked up, saw the side of the bus and the passengers in it, and then the middle part of the bus struck the front end of the car. The car immediately left the pavement and it turned over and over. In answer to a question by the court to explain, if the car was on its right side of the road and the bus was going around it, how it came to hit the front end of the car, he answers, "He cut back too quick, is all I know." This is as far as any of these three witnesses' testimony goes in

support of the plaintiff's theory as to how the accident occurred.

The witness Homer Perkins who was driving a log truck, following the two vehicles involved in the accident, states that they both passed him and that after, when they were some 125 to 150 yards ahead, the bus attempted to pass the car. He says the car was traveling well to the right of the black stripe in the center of the pavement and that after the bus had gotten to the left of it, and in the act of passing ahead, it cut back too quickly to the right hand side of the road and it hit the front of the car. The car went off the road and was wrecked. This witness testifies that he continued on his way past the scene of the accident, stopped his truck in front of the bus, walked back some distance and when he saw that the bus driver and others were attending to those who had been injured, he got into his truck and went on. He spoke to no one at the scene of the accident. His testimony is the only direct evidence in the record tending to bear out the plaintiff's contention as to the actual manner in which the accident took place. The defendant strenuously contends that this party did not witness the accident at all. The passengers on the bus who testified, have no recollection whatever of having seen him or his truck around the scene of the accident, and the driver who states that in ascertaining the names of all the witnesses, in line with his duty, no one passed the scene of the accident or stopped during the time that he remained there.

Taking up now for consideration the testimony of those witnesses named for the defendant, we come first to that of Mrs. James Mimms. She is the wife of a rice farmer, living about six miles out of Lake Charles, and was on her way to Oakdale. She was sitting in the first seat in the bus opposite the side on which the driver sits. That of course would be the side of the bus which came in contact with the coupe automobile. Mrs. Mimms states that she saw the car going ahead in front of them and that the bus driver blew the horn of his bus in order to give the car warning of his approach and intention to pass ahead. She says that the car was well over on its right hand side when the driver of the bus pulled to the left and started to pass ahead. To quote her own words: "When he started to pass, the car was on the right side of the black line, the car then pulled on the shoulder slightly and then cut back on the road, and at that time pulled too far in and hit the bus." The impact was on the side of the bus almost directly on a line below the place where she was sitting. After the impact, she directed her attention to the front and is positive that the bus was still on its left hand side of the pavement and did not cut short in front of the car. After the wreck, Miss Durbin and Mr. Ipes were taken aboard the bus and Mrs. Mimms who then took her seat near them, heard Miss Durbin ask Mr. Ipes what had happened, to which he replied, "you ran into the bus."

The next of these witnesses is Mrs. Cecilia Dufour who works as a stenographer for a fire insurance adjuster in Lake Charles. She was seated about the third seat on the right hand side of the bus and heard the bus driver blow his horn and turn to his left to pass the car which was ahead of them. She states that when the bus was about to pass the car she could see the top of the car and heard a scraping noise along the side of the bus. She then saw the car run off the pavement to the shoulder of the road, and from the manner it was going, apparently the driver had lost control of it and it turned over three times. She saw Mrs. Fogleman, the plaintiff, go out of the window head first and the car turned over her. Mrs. Dufour was asked the following question: "There has been one statement at least to the effect that the bus cut in ahead of the Plymouth too quickly as it was trying to pass. Is that correct?" She answered: "That is a false statement. The bus was in its correct position," and she repeats that it maintained its position on the left side of the road until the accident had taken place. As did Mrs. Mimms, Mrs. Dufour also heard the conversation between the occupants of the car after they had been transferred to the bus and heard Mr. Ipes reply to Miss Durbin's question, as to what had happened, that she had hit the bus.

Mrs. Rosa Lee Reiszner is a school teacher at Vincent, a small settlement near Sulphur, Louisiana. She was on her way to Alexandria and was sitting on the first seat in the bus immediately behind the driver. She states that the driver blew the horn and then proceeded to pass the car. She does not know how far in the act of passing he had proceeded when she heard a screeching sound and upon looking around she saw the car turning over. She is positive that the bus driver was on his left hand side and was going straight ahead at the time she heard the screeching noise referred to.

The remaining passenger who testified as a witness for the defendant is Mr. Frank Casteix, who works for the Central Louisiana State Hospital at Pineville. He occupied the second seat behind the driver. He states that the bus driver blew his horn several times before attempting to pass the car and then pulled to the left hand side of the road. The bus, he says had completely passed the car and then the car seemed to have picked up speed and again caught up with the bus and he then heard a screeching noise. Upon looking back he saw the car turn over. He is equally as positive as were the other passengers that the bus occupied its left lane of travel and was in that lane when he heard the screeching noise. As did Mrs. Mimms and Mrs. Dufour, he also heard Mr. Ipes' remark to Miss Durbin to the effect that she had hit the bus.

The bus driver's testimony is to the effect that he blew his horn to warn the car of his approach and intention to pass ahead and that apparently the driver heeded his signal as she pulled over to the right and he proceeded to go on. He says that he picked up speed and while in the act of passing he blew his horn once more and the car pulled further to its right. He was to his extreme left side of the road and had passed the car when seemingly it caught up with the bus and hit it just a little past the center of the right hand side of the body. He is positive that he did not cut in front of the car.

The mark on the bus showed the impact to have been behind the door, beneath the first seat on the right, which corroborates Mrs. Mimms' testimony in that respect. The testimony also shows that the skid marks made either by burnt rubber or by the rim of one or two wheels of the car started some four to ten inches on the west or left hand side of the center stripe in the road and ran in an oblique direction some thirty or forty feet along the pavement and then on to the shoulder and into the ditch along the highway eighty feet or more to the point where the car came to a rest. It can hardly be disputed that these skid marks were the ones made by the car. Several witnesses testified regarding these marks and the vast preponderance of the testimony is that they were found to exist exactly as we have tried to describe them.

■■ We are ever mindful of the rule that in a case presenting only questions of fact, the findings of the trial judge have to be given great consideration and should not be set aside unless found to be manifestly erroneous. In this case however, we find ourselves unable to agree with the district judge, and finding such error to exist, it becomes our duty to reverse the judgment appealed from. Certainly the plaintiff has not discharged that burden which the law imposed on her to have made out her case of negligence against the defendant's bus driver to a legal certainty. Her own testimony and that of the other occupants of the car is far from being satisfactory. Hers especially is very indefinite and evasive. That of Mr. Ipes is an apparent conflict with hers and the driver of the car. As for the witness Perkins, there is enough testimony in the record to cast some doubt about his being present or near the scene of the accident when it happened. According to his own testimony, his actions were not those of the normal individual who finds himself in the midst of such a scene as this. Called in rebuttal, Miss Durbin, the driver of the car, testified that she had applied her brakes when she noticed the bus. This is in contradiction to her testimony in chief when she testified that she did nothing to stop her car.

The testimony of the passengers on the bus who testified for the defendant is clear and convincing. The three ladies certainly impress us as having stated what they had seen exactly in the manner in which they did see the accident. Whilst it may be that the witness Casteix told a bit more than they did, certainly their testimony strikes us as being entirely fair and unprejudiced in any degree. Taking it at its full value, we can not but feel that it gives weight to the defendant's contention as to how the accident happened and certainly it tends to disprove the plaintiff's theory. The learned trial judge appears to have relied to some extent on the skid marks found on the highway, as a physical fact supporting the plaintiff's case. He states that these skid marks ran parallel with the pavement, thus evidencing that the car held to its right hand side of the road. As we have already stated however, the vast preponderance of the testimony on this point, is to the contrary. Stripped of this last bit of support, we are bound to conclude, contrary to the way he did, that the plaintiff has failed to make out her case, and accordingly, the judgment must be reversed.

For the reasons stated, it is now ordered adjudged and decreed that the judgment appealed from be and the same is hereby reversed, set aside and annulled, and it is now further ordered that there be judgment herein in favor of the defendant, Interurban

Transportation Company, and against the plaintiff, Mrs. Ethel Burroughs Fogleman, dismissing her suit and rejecting her demands. The suit having been prosecuted in forma pauperis, no costs can be taxed.